IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JACQUELINE CAZEAU, DAWN STOJKOVIC, MICHAEL ANDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TPUSA, Inc., dba TELEPERFORMANCE USA,<br><br>Defendant | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO INTERVENE**<br><br>Case No. 2:18-cv-00321-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

In October 2019, Plaintiffs Jacqueline Cazeau, Dawn Stojkovic, and Michael Anderson entered into an agreement with Defendant TPUSA, settling their Fair Labor Standards Act (FLSA) claims (the Settlement Agreement). Because FLSA claims cannot be settled without court approval, the parties filed a joint motion, asking the court to certify this collective action and approve the Settlement Agreement. Shortly after the parties filed their joint motion, Proposed Intervenors Chantel Headspeth and Kaylee McBride filed a Motion to Intervene and/or Object to Proposed FLSA Settlement and Proposed Notice. Proposed Intervenors move to intervene in this action and object to portions of the Settlement Agreement as unfair and unreasonable. Plaintiffs and TPUSA separately opposed the Motion to Intervene.

For the following reasons, Proposed Intervenors' Motion to Intervene is DENIED.

1

## BACKGROUND

### I. The Cazeau Action

Plaintiffs, former employees of TPUSA, commenced this action in April 2018.[1] Although Plaintiffs originally brought five claims against TPUSA, they later filed an Amended Complaint that included only two claims: (1) a FLSA violation claim and (2) a Utah Payment of Wages Act violation claim.[2] Plaintiffs allege TPUSA required them to arrive fifteen minutes early to mandatory trainings and work shifts but failed to compensate them for those fifteen minutes.[3] Plaintiffs purport to bring this action individually and collectively on behalf of all similarly situated TPUSA employees nationwide.[4]

In December 2018, the court granted TPUSA's Motion to Dismiss Plaintiffs' Utah Wages Act claim without prejudice.[5] Shortly after the court resolved TPUSA's Motion to Dismiss, Plaintiffs and TPUSA engaged in mediation and ultimately entered into the Settlement Agreement.[6] On October 16, 2019, the parties jointly moved the court to approve the Settlement Agreement and to allow for notification to be sent to individuals who may join this action via the FLSA's procedures.[7]

### II. The Ohio Action

In May 2019, Proposed Intervenors filed their own complaint against TPUSA in the United States District Court for the Southern District of Ohio (Ohio Court), alleging they are or were

---

[1] *See* Dkt. 2 (Complaint).

[2] *See* Dkt. 21 (Amended Complaint) at 10–13.

[3] *Id.*

[4] *Id.* ¶ 28.

[5] *See* Dkt. 34.

[6] Dkt. 44 at 3.

[7] *See* Dkt. 44.

employees of TPUSA and that TPUSA violated the FLSA and the Ohio Prompt Pay Act by not compensating them for pre-shift work during the entirety of their employment.[8]  Proposed Intervenors alleged TPUSA required them to locate functioning work stations each day, which took between five to forty-five minutes, but did not compensate them for that time.[9]  Proposed Intervenors also alleged they brought the Ohio Action individually and on behalf of similarly situated persons in Ohio.[10]  At least six other Ohio TPUSA employees have joined Proposed Intervenors in the Ohio Action.[11]

On September 16, 2019, Proposed Intervenors filed in the Ohio Action a Motion for Conditional Class Certification.[12]  On October 16, 2019, TPUSA sought an extension of time to respond to that motion.[13]  It is unclear whether TPUSA has responded to the Motion for Conditional Class Certification, but on November 4, 2019, TPUSA moved to stay the Ohio Action.[14]  TPUSA argued the Ohio Action should be stayed because Proposed Intervenors' claims overlap with Plaintiffs' claims in this case.[15]  According to TPUSA, if putative Ohio Action class members opted into this action and joined in the parties' settlement, they would release their claims in the Ohio Action pursuant to the Settlement Agreement's release provision.[16]  The Ohio Court

---

[8] Dkt. 52 at 4.

[9] *Id.* at 4–5; Dkt. 52-1 (Ohio Complaint) ¶¶ 24–26.

[10] Dkt. 52 at 4.

[11] *Id.*

[12] *Id.* at 5.

[13] *Id.* at 6.

[14] *Id.*

[15] Dkt. 52-5 at 7.

[16] *Id.* at 6–8.

granted TPUSA's motion to stay and is holding Proposed Intervenors' Motion for Conditional Class Certification in abeyance pending this action's resolution.[17]

### III. Motion to Intervene

After Plaintiffs and TPUSA jointly moved the court to approve their Settlement Agreement, Proposed Intervenors moved to intervene.[18] In their Motion, Proposed Intervenors request five forms of relief.[19] First, they move to intervene in this action.[20] Second, they object to certain provisions of the parties' Settlement Agreement, including the parties' proposed notice and the scope of the Settlement Agreement's release.[21] Third, they move to be excluded from the Settlement Agreement.[22] Fourth, in the alternative, they move to stay these proceedings until the opt-in period in the Ohio Action ends.[23] And fifth, they move the court to limit the scope of the Settlement Agreement's release provision.[24]

Plaintiffs and TPUSA separately oppose the Motion to Intervene, arguing Proposed Intervenors cannot meet the standard for intervention because they have not opted into this action.[25]

---

[17] Dkt. 69-1.

[18] *See* Dkt. 52.

[19] *See id.* at 2. Although Proposed Intervenors list only four requests for relief, the court construes their first request—to intervene and/or object to the parties' joint motion for settlement—as two separate issues: (1) a request to intervene and (2) objections to the Settlement Agreement.

[20] *Id.* at 10–12.

[21] *Id.* at 12–13.

[22] *Id.*

[23] *Id.* at 13.

[24] *Id.* at 13–14.

[25] *See* Dkt. 59; Dkt. 60.

**LEGAL STANDARD**

The Tenth Circuit "follows a somewhat liberal line in allowing intervention," advising that "courts should allow intervention where no one would be hurt and greater justice could be attained."[26] "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."[27] Rule 24 of the Federal Rules of Civil Procedure provides two methods for a nonparty to intervene in an action: intervention of right[28] and permissive intervention.[29]

Proposed Intervenors argue only that they are entitled to intervention as of right under Rule 24(a)(2).[30] Therefore, Proposed Intervenors must establish four elements: "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties."[31] The court "must permit" intervention upon such a showing.[32] But Proposed Intervenors have not established the second and third elements in light of the "opt in" procedure in FLSA actions. Because Proposed Intervenors have not established those two elements, the court does not reach the remaining elements.

---

[26] *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249–50 (10th Cir. 2001) (quotation marks and citations omitted).

[27] *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (en banc), *abrogated on other grounds*, *Hollingsworth v. Perry*, 570 U.S. 693 (2013).

[28] *See* Fed. R. Civ. P. 24(a).

[29] *See id.* 24(b).

[30] Dkt. 52 at 8–12. In passing, Proposed Intervenors mention permissive intervention, but they never argue they should be granted permissive intervention. *Id.* at 8 ("Fed. R. Civ. P. 24, which allows intervention as a matter of right by those who claim an interest relating to the property or transaction that is the subject of the action, and permissive intervention by those who share common questions of law and fact with the main action.").

[31] *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019).

[32] Fed. R. Civ. P. 24(a).

## ANALYSIS

### I. Proposed Intervenors Have Failed To Establish an Interest That May Be Impaired By This Action

Proposed Intervenors have not established an interest in this matter.[33] "Under Rule 24(a)(2), the intervenors must claim an interest relating to the property or transaction which is the subject of the action"[34] and "that could be adversely affected by the litigation."[35] This burden is "minimal . . . and such an impairment may be contingent upon the outcome of litigation."[36] Indeed, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."[37] But the intervenor may not "rely on an interest that is wholly remote and speculative."[38] Accordingly, "[w]hether an applicant has an interest sufficient to warrant intervention . . . is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[39] Thus, the court applies "practical judgment when determining whether the strength of the interest and the potential risk of injury to that interest justify intervention,"[40] cognizant "that the determination of a party's right to intervene is, at least in part, a process of equitable balancing."[41]

---

[33] The court addresses the second and third elements for intervention together because "the question of impairment is not separate from the question of existence of an interest." *Nat. Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978); *see Kane Cty.*, 928 F.3d at 891–92 (analyzing the interest and impairment elements together); *see also Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, Case No. 19-2620-JAR-ADM, 2020 WL 1503477, at *3 (D. Kan. March 30, 2020) (analyzing the interest and impairment elements together).

[34] *Clinton*, 255 F.3d at 1251 (quotation marks and brackets omitted).

[35] *Kane Cty.*, 928 F.3d at 891 (citation omitted).

[36] *Id.* (quotation marks, brackets, and citations omitted).

[37] *San Juan Cty.*, 503 F.3d at 1195 (citation omitted).

[38] *Id.* at 1203 (citation omitted).

[39] *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted).

[40] *Kane Cty.*, 928 F.3d at 891 (quotation marks and citation omitted).

[41] *San Juan Cty.*, 503 F.3d at 1195.

Proposed Intervenors argue they have an interest in this action because—assuming the court approves the proposed Settlement Agreement—putative Ohio class members may unknowingly release their Ohio Action claims by opting into this action and joining the settlement.[42]  According to Proposed Intervenors, this interest could be impaired if they are not permitted to intervene because putative class members in the Ohio Action "could thus unknowingly settle all [Ohio Action] claims for a nominal check delivered with notice because they are not experienced employment attorneys and have not yet received notice of the asserted claims or rights in the Ohio Action."[43]

Plaintiffs and TPUSA counter that Proposed Intervenors lack standing to argue on behalf of the putative Ohio class members' interests.[44]  That is, Plaintiffs and TPUSA maintain Proposed Intervenors have no interest in this matter because they have not opted into it and can only argue for their interests, which do not include putative class members' interests.  The court agrees because the FLSA implements certain procedures that (1) protect Proposed Intervenors' actual interests in pursuing their claims in the Ohio Action and (2) nullify Proposed Intervenors' purported interest in protecting putative class members from court-approved notice.

First, there is no question Proposed Intervenors have an interest in pursuing their claims in whatever manner they choose in the Ohio Action.  And the FLSA's opt-in requirement explicitly protects Proposed Intervenors' interest in doing so.  Under the FLSA, an employee may sue an

---

[42] *See* Dkt. 52 at 10–12.  The Settlement Agreement proposes the parties send notice of this action with a check. *See* Dkt. 44-1 (Settlement Agreement) ¶ 10.  If the recipient of that notice cashes the check, he or she accepts the terms of the Settlement Agreement. *Id.* ¶ 10(C).  One of those terms is a release provision that reads, in part: "Settlement Class Members shall release all claims . . . that are or were asserted in the Action, or that could have been asserted based on the factual allegations in the Action." *Id.* ¶ 3(A).  In the Ohio Action and here, TPUSA has argued the release provision would encompass the FLSA and state law claims in both actions. *See* Dkt. 52-5 at 7–8; *see also* Dkt. 60 at 1–4.

[43] Dkt. 52 at 11–12.

[44] *See* Dkt. 59 at 2; *see also* dkt. 60 at 9–11.

7

employer for FLSA violations on behalf of herself and "in behalf of . . . other employees similarly situated."[45] But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[46] In other words, "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class, i.e., given his written, filed consent to join other members in the lawsuit."[47] Indeed, "[c]laims of potential plaintiffs who do not 'opt-in' are unaffected by the lawsuit."[48]

Proposed Intervenors have not opted into this action or the proposed Settlement Agreement and appear to have no intentions of doing so.[49] Accordingly, their interests in pursuing their claims in the Ohio Action will remain unaffected by the outcome of this litigation unless they later decide to opt into this action and accept the Settlement Agreement's terms.[50] Of course, if Proposed Intervenors made that decision, they would not need to move to intervene. They would only need to file their written consent with the court.[51]

Second, Proposed Intervenors do not represent and have no interest in representing similarly situated employees, i.e., the putative Ohio class members. Under the FLSA, Proposed Intervenors may represent themselves and "similarly situated" employees.[52] To determine who qualifies as a similarly situated employee, Proposed Intervenors must obtain conditional

---

[45] 29 U.S.C. § 216(b).

[46] *Id.*

[47] *Whittington v. Taco Bell of America, Inc.*, Civil Action No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *1 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)).

[48] *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1115 (D. Colo. June 1, 2017).

[49] *See* Dkt. 52 at 13 (asking this court to stay its proceedings until putative Ohio class members have the opportunity to opt into the Ohio Action).

[50] *See Whittington*, 2013 WL 6022972, at *1.

[51] *See* 29 U.S.C. § 216(b).

[52] *Id.*

certification.[53]  But unlike a Rule 23 class certification that produces a class with "an independent legal status," the FLSA's "conditional certification does not produce a class with an independent legal status, or join additional parties to the action."[54]  Instead, "the sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court,"[55] i.e., by "opting in." Accordingly, Proposed Intervenors have "no personal interest in representing putative, unnamed claimants"[56] and can vindicate their rights under the FLSA and Ohio law without having other individuals opt into the Ohio Action.[57]

Proposed Intervenors cite *Rogers v. WEBstaurant Store Inc.*[58] for the proposition that they have an interest in what kinds of communications are being sent to their putative class members.[59]  But *Rogers* deals with an issue that is factually and legally distinct from Proposed Intervenors' claimed interest.  There, the defendant sent misleading communications to its current employees, who were the named plaintiff's putative class members, and the named plaintiff sought an order to restrain the defendant from doing so.[60]  The court relied on its "authority to govern the conduct of counsel and parties in FLSA collective actions"—an authority that "exists even before a class is certified"—to order the defendant correct its misleading communications.[61]

---

[53] *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–05 (10th Cir. 2001).

[54] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (quotation marks omitted).

[55] *Id.* (citations omitted).

[56] *Id.* at 78.

[57] *See id.* at 77 ("While settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in [the named plaintiff's] suit, such putative plaintiffs remain free to vindicate their rights in their own suits.  They are no less able to have their claims settled or adjudicated following [named plaintiff's] suit than if [named plaintiff's] suit had never been filed at all.").

[58] Civil Action No. 4:18-CV-00074-JHM, 2018 WL 3058882 (W.D. Ky. June 20, 2018).

[59] Dkt. 67 at 9.

[60] *Rogers*, 2018 WL 3058882, at *1–3.

[61] *Id.* at 4–5 (citations omitted).

Here, Proposed Intervenors' concern is not that TPUSA is sending unilateral and misleading communications to potential class members. Their concern is that the notice contemplated in the Settlement Agreement fails to provide putative class members with sufficient information concerning the Ohio Action so they can make an "informed choice" about which action to join.[62] This concern is amplified by the Settlement Agreement's release provisions, which TPUSA posits "will in all probability have a dispositive effect on a large number of the individuals who comprise the proposed [Ohio Action] class."[63] But Proposed Intervenors ignore the critical difference between the proposed notice in this case and the defendant's communications in *Rogers*: the proposed notification here must undergo court review before it is sent to putative class members.[64] Thus, because the court must first certify that the Settlement Agreement—including its proposed notice and release provision—is fair and reasonable, Proposed Intervenors' interest is better characterized as a remote, speculative concern that is too far removed from the subject matter of this action to warrant intervention.

At bottom, Proposed Intervenors seek intervention not to vindicate or protect an interest in this case, but rather to protect the interests of unidentified members of a possible future class in the Ohio Action. This is insufficient. Proposed Intervenors have failed to identify an interest they have in this action that warrants their intervention, and their request to intervene is DENIED.

---

[62] Dkt. 67 at 10 (citation omitted). In an apparent recognition of the need to ensure putative Ohio class members are sufficiently informed of their rights, Plaintiffs offered to amend the Settlement Agreement's notice by adding information about the Ohio Action. *See* Dkt. 59 at 4 n.2. TPUSA did not agree to such an amendment.

[63] Dkt. 52-5 at 8.

[64] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989) (confirming "the existence of the trial court's discretion" "in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought."); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment *after scrutinizing the settlement for fairness*.") (emphasis added).

## II.     Pursuant to the Court's Duty to Scrutinize the Settlement Agreement, It Will Consider Proposed Intervenors' Objections

Because the court has denied Proposed Intervenors' request to intervene, it would ordinarily not consider their other requests, including their objections to the Settlement Agreement. Under the FLSA, however, the court must scrutinize the Settlement Agreement for reasonableness and fairness and also has discretion to ensure the notice being sent to putative class members allows them to make an informed decision concerning whether to join this action.[65] Thus, even though the court denies Proposed Intervenors' request to intervene, it will nonetheless consider Proposed Intervenors' objections to the Settlement Agreement—not because Proposed Intervenors have an interest in this action that warrants intervention, but as part of the court's duty to scrutinize the Settlement Agreement.

The court finds this is proper, in part, because of TPUSA's representations in the Ohio Action. There, TPUSA made specific arguments in support of its Motion to Stay that bear on the Proposed Intervenors' present Motion. First, TPUSA explicitly argued this action's settlement "will in all probability have a dispositive effect on a large number of the individuals who comprise the proposed [Ohio] Class" because if those individuals join this action's settlement, they will release their FLSA and Ohio law claims.[66] Second, TPUSA argued the Ohio Court should leave Proposed Intervenors' objections for this court's consideration.[67] The Ohio Court appears to have accepted TPUSA's reasoning because it granted the Motion to Stay and is holding Proposed

---

[65] *See Hoffman-La Roche Inc.*, 493 U.S. 169–70; *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *Keel v. O'Reilly Auto Enterprises, LLC*, Case No. 2:17-CV-667, 2018 WL 10509413, *2 (D. Utah May 31, 2018) ("The Tenth Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, but district courts within this district and within the Tenth Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary.") (citations omitted).

[66] Dkt. 52-5 at 7–8.

[67] Dkt. 60-4 at 14 ("[The Ohio Court], as the second-filed court, should therefore decline to consider [Proposed Intervenors'] attacks on the Cazeau settlement, *which are not only issues for Judge Shelby in the first instance*, they are issues which [Proposed Intervenors] have chosen to *submit to him for his consideration*.") (emphasis added).

Intervenors' Motion for Conditional Class Certification in abeyance—effectively preventing Proposed Intervenors from notifying their putative class members of the Ohio Action.[68]  Now, seemingly attempting to use this action's Settlement Agreement as a sword in the Ohio Action, TPUSA argues not only that Proposed Intervenors cannot intervene, but the court should ignore their objections.[69]  Nothing compels this court to ignore Proposed Intervenors' objections as part of its overall review of the Settlement Agreement, and TPUSA's attempt to prevent notice of the Ohio Action from reaching putative class members is further reason for the court to do so.

In sum, the court denies Proposed Intervenors' Motion to Intervene and thus will not consider their requested forms of relief.  But the court will consider their objections to the Settlement Agreement pursuant to its duty to scrutinize the Settlement Agreement for fairness and reasonableness.  The court does not address those specific objections as part of this Order but will address them as part of its forthcoming order on the parties' Joint Motion For Certification and Approval of Collective Action Settlement.

## CONCLUSION

For the reasons explained above, Proposed Intervenors' Motion to Intervene[70] is DENIED. Nevertheless, the court will consider Proposed Intervenors' objections as part of its overall review of Plaintiffs and TPUSA's proposed Settlement Agreement in a separate order.

SO ORDERED this 22nd day of June 2020.

BY THE COURT

ROBERT J. SHELBY
United States Chief District Judge

---

[68] *See* Dkt. 69-1.

[69] *See* Dkt. 60 at 7–11.

[70] Dkt. 52.