IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JACQUELINE CAZEAU, DAWN STOJKOVIC, MICHAEL ANDERSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>TPUSA, Inc., dba TELEPERFORMANCE USA,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING SECOND JOINT MOTION FOR CERTIFICATION AND APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>Case No. 2:18-cv-00321-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

      Plaintiffs Jacqueline Cazeau, Dawn Stojkovic, and Michael Hughes (formerly Anderson) initiated this Fair Labor Standards Act (FLSA) action against Defendant TPUSA, Inc., alleging it owes unpaid wages to certain current and former employees.  After over a year of litigation, the parties attended mediation and entered into an agreement settling Plaintiffs' FLSA claims (Settlement Agreement).  The parties filed a joint motion (First Joint Motion) to grant conditional class certification and approve the Settlement Agreement.[1]  The court denied the First Joint Motion because it determined the Settlement Agreement was not fair and reasonable.[2]  In its Order Denying Joint Motion for Certification and Approval of Collective Action Settlement (Prior Order),[3] the court identified several changes necessary for the parties to cure.

---

[1] Dkt. 44 (First Joint Motion).

[2] *See* Dkt. 78 (Prior Order).

[3] *Id.*

Now before the court is the parties' Second Joint Motion for Certification and Approval of Collective Action Settlement (Second Joint Motion).[4]  For the reasons explained below, the Second Joint Motion is GRANTED.  The court grants preliminary approval to the Amended and Restated Settlement Agreement (Amended Settlement Agreement)[5] as defined and proposed, provided the parties implement the remaining necessary changes set forth in the Prior Order.

## BACKGROUND

Plaintiffs Cazeau, Stojkovic, and Hughes allege they are all previous employees of TPUSA in Utah.[6]  They allege that during their employment TPUSA required its employees to arrive fifteen minutes early to work shifts and training classes but did not compensate them for that time.[7]

In the operative Amended Complaint,[8] Plaintiffs assert two causes of action: (1) violation of the FLSA, and (2) violation of the Utah Payment of Wages Act.[9]  The Amended Complaint included an image of a "mandatory training notice that instructed employees to 'arrive at least 15 minutes before [their] class is scheduled to begin.'"[10]

Plaintiffs bring "this action individually and as collective and class actions on behalf of [similarly situated employees]."[11]  Specifically, Plaintiffs proposed a nationwide collective action class consisting of "[a]ll persons who are, or have been, employed by TPUSA as non-

---

[4] Dkt. 83 (Second Joint Motion).

[5] Dkt. 83-1 (Amended Settlement Agreement).

[6] Dkt. 21 (Amended Complaint) ¶¶ 4–6.

[7] *Id.* at 2–6.

[8] Dkt. 21 (Amended Complaint).

[9] *Id.* at 10–13.

[10] *Id.* ¶ 22 (alteration in original).

[11] *Id.* ¶ 28.

exempt employees[,] . . . who . . . failed to receive at least minimum wage for all hours worked and/or overtime compensation for hours worked in excess of 40 hours in a single work week."[12]

Before filing its Answer denying Plaintiffs' allegations, TPUSA successfully moved to dismiss Plaintiffs' Utah Payment of Wages Act claim.[13]  Thus, the only claim remaining in this action is Plaintiffs' FLSA claim.

After the court dismissed Plaintiffs' Utah Payment of Wages Act claim, the parties engaged in settlement discussions.[14]  Those discussions led to an official day-long mediation session in Los Angeles in April 2019.[15]  Although the parties agreed to settle this case at mediation, they continued to negotiate essential terms of the settlement for months after the mediation.[16]  Ultimately, the parties entered into the Settlement Agreement and moved the court to conditionally certify Plaintiffs' collective action class and approve the Settlement Agreement.[17]

After reviewing the parties' First Joint Motion, the court denied the Motion, finding  the proposed Settlement Agreement was not fair and reasonable.[18]  Specifically, the court identified several provisions in the agreement and proposed notice to putative class members that were "inherently unfair, unreasonable, and contradictory to the FLSA's underlying policies."[19]  However, the court also concluded the collective action warranted conditional approval and the

---

[12] *Id.* ¶ 28(a).

[13] *See* Dkt. 34.  The court dismissed Plaintiffs' Utah Payment of Wages Act claim without prejudice, and Plaintiffs have not replead that claim.

[14] Dkt. 44 (First Joint Motion) at 3.

[15] *Id.*; Dkt 44-6 (Stojkovic Decl.) ¶ 10.

[16] Dkt. 44 (First Joint Motion) at 3.

[17] *See* Dkt. 44 (First Joint Motion); *see also* Dkt. 44-1 (Settlement Agreement).

[18] *See* Dkt. 78 (Prior Order).

[19] *Id.* at 11.

litigation involved a bona fide dispute—both requirements for the settlement to move forward.[20]

Following the court's guidance, the parties' amended the Settlement Agreement and filed the

Second Joint Motion.[21]

## LEGAL STANDARDS

### I.   FLSA Settlement

"Congress enacted the FLSA in 1938 with the goal of protecting all covered workers

from substandard wages and oppressive working hours."[22]  Indeed, the FLSA's "prime purpose .

. . [is] to aid the unprotected, unorganized and lowest paid of the nation's working population."[23]

To that end, "Congress made the FLSA's provisions mandatory . . . [and its] provisions are not

subject to negotiation or bargaining between employers and employees."[24]  Thus, "[w]hen

employees file suit against their employer to recover back wages under the FLSA, the parties

must present any proposed settlement to the district court for" its approval.[25]

"The primary focus of the [c]ourt's inquiry in determining whether to approve the

settlement of a[n] FLSA collective action is not, as it would be for a Rule 23 class action, on due

process concerns, . . . but rather on ensuring that an employer does not take advantage of its

employees in settling their claim for wages."[26]  Accordingly, before the court can approve an

---

[20] *Id.* at 6–11.

[21] Dkt. 83 (Second Joint Motion).

[22] *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quotation marks, brackets, and citation omitted).

[23] *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945) (citations omitted).

[24] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982) (citation omitted).

[25] *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011) (citation omitted); *see Keel v. O'Reilly Auto Enters., LLC*, Case No. 2:17-cv-667, 2018 WL 10509413, *2 (D. Utah May 31, 2018) ("The Tenth Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, but district courts within this district and within the Tenth Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary.") (citations omitted).

[26] *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (citations omitted).

FLSA settlement, the court "must first determine whether the settlement resolves a *bona fide* dispute—one that involves 'factual issues rather than legal issues such as the statute's coverage and applicability.'"[27]  If the court finds there is a bona fide dispute, it must then determine (1) whether the proposed settlement is "fair and reasonable to all parties concerned" and (2) whether the proposed settlement "contain[s] a reasonable award of attorneys' fees."[28]

## ANALYSIS

The court's Prior Order concluded: (1) the proposed collective action should be conditionally certified, (2) this litigation involves a bona fide dispute, and (3) the Settlement Agreement was not fair and reasonable.[29]  The analysis and reasoning of the court's Prior Order is incorporated by reference and will not restated here.

In the present Motion, the parties seek certification of the collective action for purposes of settlement and approval of the Amended Settlement Agreement.  They argue the Amended Settlement Agreement implements the changes required by the Prior Order and is now fair and reasonable.

Having reviewed the Amended Settlement Agreement, the court finds it includes many revisions specifically suggested by the court.  These revisions were already determined to be fair and reasonable.[30]  Therefore, this Order addresses only the remaining provisions and factors not previously evaluated by the court.  These include the Gross Settlement Amount, certain

---

[27] *Keel*, 2018 WL 10509413, at * 2 (quoting *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016)).

[28] *Id.* (citations omitted).

[29] Dkt. 78 (Prior Order) at 6.

[30] Dkt. 78 (Prior Order) at 11–12. ("[T]he court addresses . . . [problematic] provisions and other issues it has identified with the Settlement Agreement to help guide the parties should they reapply for approval of an amended settlement agreement.").

provisions of the Amended Settlement Agreement and proposed notice, incentive payments, attorney's fees and costs, and administrator's costs.  The court will address these issues in turn.

## I.    The Amended Settlement Agreement Is Fair and Reasonable

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."[31]  The court has carefully reviewed the Amended Settlement Agreement and finds it to be fair and reasonable.

The court turns first to the Gross Settlement Amount.

### A.  The Gross Settlement Amount is reasonable.

In determining whether a FLSA settlement is fair and reasonable, "courts regularly examine the factors that apply to proposed class action settlements under Rule 23(e)"[32] and "contextual factors pertinent to the statutory purpose of the FLSA."[33]  And "[w]here . . . the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the [c]ourt may presume the settlement to be fair, adequate, and reasonable."[34]

Traditionally, the Tenth Circuit has employed four factors when considering the fairness of a proposed settlement agreement under Rule 23(e):[35] (1) whether the proposed settlement was

---

[31] *McMillian v. BP Service, LLC*, Case No. 19-2665-DDC-TJJ, 2020 WL 969870, at *2 (D. Kan. Feb. 28, 2020) (citation omitted).

[32] *Id.*

[33] *Whittington v. Taco Bell of America, Inc.*, Civil Action No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (citation omitted); *see Gambrell v. Weber Carpet, Inc.*, Civil Action No. 10-2131-KHV, 2012 WL 5306273, at *4 (D. Kan. Oct. 29, 2012) ("In determining whether the proposed settlement is fair and equitable, the factors which courts consider in approving a class action settlement[] under Rule 23(e) . . . are instructive, but not determinative. The Court must also consider factors relevant to the history and policy of the FLSA.") (citations omitted).

[34] *Acevedo v. Southwest Airlines Co.*, Civil Action No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D. N.M. Dec. 10, 2019) (quotation marks and citations omitted).

[35] *Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (citation omitted); *see also* Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984).

fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable.[36]  These factors "are instructive, but not determinative."[37]

In 2018, Rule 23(e) was amended to include its own four-factor test for fairness of a proposed settlement agreement.[38]  The 2018 Amendments have led some to question whether the Rule 23(e)(2) factors supersede the Tenth Circuit factors, but the Tenth Circuit has in at least one recent unpublished opinion continued to apply its own factors.[39]

Finally, there are also nine FLSA contextual factors the court considers, "some of which overlap with the [Tenth Circuit] factors listed above"[40] and the factors the court considered to determine a bona fide dispute exists.[41]

---

[36] *Id.*; *see also Whittington*, 2013 WL 6022972, at *4 (citations omitted).

[37] *Gambrell*, 2012 WL 5306273, at *4 (citation omitted).

[38] The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitable relative to each other.  Fed. R. Civ. P. 23(e)(2).

[39] *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752 (10th Cir. 2020) (unpublished).

[40] *Whittington*, 2013 WL 6022972, at *4.

[41] The nine FLSA contextual factors are: (1) defendants' business, (2) the type of work performed by plaintiffs, (3) the facts underlying plaintiffs' reasons for justifying their claims, (4) defendants' reasons for disputing plaintiffs' claims, (5) the relative strength and weaknesses of plaintiffs' claims, (6) the relative strength and weaknesses of defendants' defenses, (7) whether the parties dispute the computation of wages owed, (8) each party's estimate of the number of hours worked and the applicable wage, and (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.  *Id.* (citation omitted).

Because "a lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process,"[42] the court will not address each set of factors individually.  Moreover, there is significant overlap between the Tenth Circuit factors, the Rule 23(e)(2) factors, and the FLSA contextual factors.  For this reason, the court conducts its analysis using the Tenth Circuit's factors but finds the parties' submissions satisfy both the Rule 23(e)(2) factors and the FLSA contextual factors.  Justification for this finding can be found in the court's analysis of the Settlement Agreement in the Prior Order and its analysis of the Amended Settlement Agreement throughout the remainder of this Order.[43]

First, it appears the parties fairly and honestly negotiated the Settlement Agreement.  In April 2019, the parties attended a day-long mediation session in Los Angeles before mediator Louis Marlin, an experienced mediator of FLSA wage claims.[44]  The parties agreed to settle this case at mediation but continued to negotiate essential terms of the settlement for months following the mediation.[45]  Ultimately, they entered into the Settlement Agreement,[46] and now the Amended Settlement Agreement.[47]  Accordingly, this factor weighs in favor of finding the Amended Settlement Agreement is fair and reasonable.

---

[42] Fed. R. Civ. P. 23(e)(2) advisory committee's notes to the 2018 Amendments ("The sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e).").

[43] For example, the court's analysis of the incentive payments, the Gross Settlement Amount, the viable defenses raised by TPUSA, the proposed notice and method of processing class members' claims, and the reasonableness of attorneys' fees, among other things, relate directly to the factors found in Rule 23(e)(2)(C).

[44] Dkt. 44 (First Joint Motion) at 3; Dkt. 44-6 (Stojkovic Decl.) ¶ 10.

[45] Dkt. 44 (First Joint Motion) at 3.

[46] *See* Dkt. 44-1 (Settlement Agreement).

[47] *See* Dkt. 83-1 (Amended Settlement Agreement).

Second, as explained in the Prior Order, TPUSA has asserted defenses to Plaintiffs' claim that call into question the outcome of this litigation.[48] Thus, this factor also favors finding the Settlement Agreement is fair and reasonable.

Third, the value of an immediate recovery outweighs the possibility of a greater recovery after protracted litigation. An employer who violates the FLSA's wage provisions is liable for the unpaid wages and "*an additional equal amount* as liquidated damages."[49] Assuming Plaintiffs are only entitled to recover minimum wage, TPUSA would be liable for approximately $3,534,302.50,[50] which would result in Plaintiffs and opt-in plaintiffs each receiving about $72.50.[51] But the parties have agreed to settle this matter for $550,000 (Gross Settlement Amount).[52] From that Gross Settlement Amount, the parties have agreed to pay the administrative fees ($103,100), Plaintiffs' incentive fees ($27,500), Plaintiffs' attorney fees (an estimated $183,315), actual costs and expenses ($12,000) and the payroll taxes due on the wage portion of the payments.[53] Plaintiffs and each opt-in plaintiff would therefore receive approximately $4.60.[54] Thus, it is clear Plaintiffs have settled for "only a small portion of the unpaid wages Plaintiffs originally claimed."[55]

Settling for a small portion of the claimed unpaid wages without accounting for the liquidated damages may in some cases be cause for concern. It is not a concern here because

---

[48] *See* Dkt. 78 (Prior Order) at 9–11; *see also* Dkt. 44 (First Joint Motion) at 13–14.

[49] 29 U.S.C. § 216(b) (emphasis added).

[50] *See* Dkt. 44 (First Joint Motion) at 13 (explaining that Plaintiffs alleged damages, if calculated at minimum wage, would total $1,767,151.25).

[51] $3,534,302.50 divided by the putative class members (48,749) equals $72.50.

[52] Dkt. 44-1 (Settlement Agreement) ¶ 4.

[53] *Id.*

[54] $550,000 minus the administrative fees, attorney fees, costs, and incentive fees, and divided by the putative class members equals $4.60.

[55] *Niles v. Denny's Inc.*, Case No. 6:16-cv-999-Orl-40TBS, 2017 WL 1352232, at *2 (M.D. Fla. March 22, 2017).

"the presence of some . . . lawful defense to payment (if any) . . . warrant[s] a reasonable compromise."[56]  As discussed in the Prior Order, if TPUSA's defenses are successful, Plaintiffs could recover nothing.  Thus, because TPUSA has defenses that call into question Plaintiffs' ability to succeed on its claim, the overall settlement amount of $550,000.00 is justified.  Further, "as both sides were represented by counsel and the case settled with the assistance of a mediator, [the court] accept[s] the [p]arties' representation that, to the extent there was a compromise, the amounts reached represent a fair and equitable one."[57]

Fourth, the judgment of the parties also favors the court finding the Amended Settlement Agreement is fair and reasonable because each parties' counsel agrees that the Amended Settlement Agreement is fair and reasonable.[58]

In sum, the court finds the factors weigh in favor of finding the Amended Settlement Agreement is fair and reasonable, and specifically finds that the Gross Settlement Amount represents a fair and reasonable compromise of Plaintiff's FLSA claim.

The court will now address specific provisions of the Amended Settlement Agreement and proposed notice.

### B. The Amended Settlement Agreement and Notice Provisions are fair and reasonable.

In the Prior Order, the court denied the parties' First Joint Motion because the Settlement Agreement and proposed notice contained provisions that were "inherently unfair, unreasonable,

---

[56] *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010).

[57] *Niles*, 2017 WL 1352232, at *2; *see* Dkt. 44 (First Joint Motion) at 14–17.

[58] *See Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) ("And both Déjà Vu and the Dancers agreed that the counsel representing both parties had extensive experience, which supports the district court's finding that counsels' positive outlook toward the fairness of the settlement weighed in favor of approving the Settlement Agreement.").

and contradictory to FLSA's underlying policies."[59]  The court identified several provisions and issues needing correction if the parties sought approval in the future.  The parties have in good faith made significant substantive revisions to address these concerns, including the following changes to the Settlement Agreement and proposed notice:

- Modified the opt-in procedure to include filing the written consents of opt-in plaintiffs with the court, bringing the procedure into full compliance with the requirements of 29 U.S.C. § 216(b);

- Modified the opt-in procedure to provide both an opt-in and objection period during which potential class members can review the Amended Settlement Agreement before choosing to opt in or object;

- Removed an impermissible confidentiality provision;

- Limited the group of released parties appropriately;

- Narrowed the scope of the release to apply only to FLSA claims related to the requirement to arrive early to new training meetings;

- Removed a general release that was ambiguous and unsupported by consideration; and

- Amended the notice to cure multiple deficiencies,[60] such as: (1) accurately explaining the voluntary nature and legal effect of opting in, (2) properly defining the scope of the release, (3) explaining how putative class members can get additional information or seek legal counsel, (4) providing putative class members with the ability to receive and review

---

[59] Dkt. 78 (Prior Order) at 11.

[60] *See* Dkt. 78 (Prior Order) at 21–24.

the settlement agreement, (5) clarifying the court's neutrality about the merits of

Plaintiff's allegations, and including disclosure of the Ohio Action.[61]

However, the following issue must be corrected for the court's preliminary approval to be

effective:

- "The notice must include language explaining that the opt-in plaintiffs will not join the
  action unless their names are filed with the court and clarifying who is expected to fulfill
  this requirement (e.g., Plaintiffs' counsel or the opt-in plaintiff)."[62]

The court will now discuss the incentive payments, attorneys' fees and costs, and

administrator's costs.

### C. Incentive Payments, Attorneys' Fees and Costs, and Administrator's Costs Are Reasonable

#### i. Plaintiffs' Incentive Payments

The court "must examine any service award payments to determine whether they are fair

and reasonable."[63]  In its Prior Order, the court requested additional information to justify the

proposed incentive awards for Cazeau, Stojkovic, and Hughes.[64]  Specifically, the court

---

[61] The following excerpt from the court's Prior Order provides further background on the Ohio Action:

> An FLSA lawsuit against TPUSA is currently pending in the United States District Court for the District of Ohio.  Before the parties sought approval of the [original] Settlement Agreement, the Ohio Action's plaintiffs sought conditional certification of their FLSA claims.  Specifically, they sought permission to notify putative class members, which would consist only of TPUSA employees in Ohio, of their ability to join that action.  In response, TPUSA argued the Ohio Action should be stayed and not be certified because the Settlement Agreement's release would resolve a substantial percentage of the proposed Ohio class members' claims.  The Ohio Court agreed with TPUSA and stayed its decision on the Ohio plaintiffs' motion for conditional certification pending resolution of this case.  Nevertheless, Plaintiffs have offered to amend the notice in this action to include a specific disclosure of the Ohio Action and to provide the contact information of counsel in the Ohio Action so that potential class members can make an informed decision.  Thus, because putative class members in Ohio have not received notice of the Ohio Action, the notice in this case must include Plaintiffs' proposed amendment.

*Id.* at 24 (quotations and citations omitted).

[62] *Id.* at 22.

[63] *Lopez v. El Mirador, Inc.*, No. CV 16-01257 RB-KBM, 2018 WL 582577, at *6 (D. N.M. Jan. 26, 2018).

[64] *See* Dkt. 78 (Prior Order) at 25–26.

requested the parties address the following factors should they seek incentive awards in an amended agreement:

> (1) the actions the class representative has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, (3) the amount of time and effort the class representative has expended in pursuing the litigation, and (4) the risks the class representative faced in pursuing the action.[65]

The Second Joint Motion provides additional details addressing each factor.[66] First, the Motion explains Cazeau sought competent legal counsel to pursue the Class's interests. She identified and contacted other Plaintiffs, helped prepare and consult for the 2019 mediation, and helped discover facts that formed the basis of the suit, among other things. In total, she contributed an estimated 30-35 hours.[67] The Motion next details that Stojkovic provided critical information and evidence that formed the basis for the settlement calculations. She contacted former coworkers, consulted with Class Counsel, and took three days off work to travel to and participate in out-of-state mediation. She contributed an estimated 55-60 hours.[68] Lastly, the Motion indicates Hughes provided additional information on TPUSA's practices, especially those relating to new employee training meetings. His work experience and numerous work relationships[69] allowed Class Counsel to evaluate TPUSA practices over time.[70] He contributed an estimated 20 hours.[71]

---

[65] Dkt. 78 (Prior Order) at 26; *see Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *12 (citing *Cook v. Niedert*, 142 F.3d 1004, (7th Cir. 1998)).

[66] Dkt. 83 (Second Joint Motion) at 20–24.

[67] Dkt. 83-4 (Cazeau Decl.) at 2.

[68] Dkt. 83-5 (Stojkovic Decl.) ¶ 11.

[69] Dkt. 83-6 (Hughes Decl.) ¶ 5.

[70] *See* Dkt. 83 (Second Joint Motion) at 30.

[71] Dkt. 83-6 (Hughes Decl.) ¶ 8.

Class Counsel points to several risks generally shared by named plaintiffs acting as class representatives.[72]  For example, class representatives assume some degree of financial risk for certain fees and costs that might be assessed against them during litigation.[73]  In employment actions, named plaintiffs may risk negative recommendations from past employers when seeking future employment, and future employers may be hesitant to hire named plaintiffs because of their involvement in a case.[74]  While no evidence suggests Cazeau, Stojkovic, or Hughes suffered any adverse consequences from pursuing this action, the court recognizes such risks do exist.

The Amended Settlement Agreement proposes the following incentive awards: (1) $12,500 to Cazeau, (2) $12,500 to Stojkovic, and (3) $2,500 to Hughes.[75]  Having reviewed the additional information and party declarations concerning the lead Plaintiffs' involvement in this case, the court finds these incentive awards to be fair and reasonable.[76]

### ii.  Attorneys' Fees

As part of its duty to scrutinize a proposed settlement, the court must determine whether attorney's fees are reasonable.[77]  The Tenth Circuit typically applies the percentage-of-the-fund

---

[72] *See* Dkt. 83 (Second Joint Motion) at 27.

[73] *See id.* (citing *Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding incentive payment to named plaintiffs based in part on their "assumption of the risk that awardable litigation and other costs might be assessed against them")).

[74] *See* Dkt. 83 (Second Joint Motion) at 27 (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y 1997).

[75] Dkt. 83-1 (Amended Settlement Agreement) ¶ 4.

[76] Class Counsel suggests Cazeau and Stojkovic are entitled to the same incentive reward, despite the difference in time contributed, because much of Stojkovic's time accrued during the week of mediation when she traveled out of state. Dkt. 83 at 23–24.  The court accepts this rationale.  While the court can easily weigh quantitative measurements of Plaintiffs' contributions, Plaintiffs and their counsel are better suited in this case to weigh the qualitative significance of such contributions.  Accordingly, the court accepts the parties' incentive payment calculations as fair and reasonable in light of the information provided.

[77] *See Lopez*, 2018 WL 582577, at *6.

method to determine fee awards when a common fund is created for settlement.[78]  Ultimately,

"the percentage reflected in a common fund award must be reasonable."[79]

In assessing reasonableness, the Tenth Circuit instructs courts to consider the twelve

*Johnson* factors:

> (1) time and labor required, (2) novelty and difficulty of the question presented by
> the case, (3) skill requisite to perform the legal service properly, (4) preclusion of
> other employment by the attorneys due to acceptance of the case, (5) customary
> fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by
> the client or circumstances, (8) amount involved and results obtained, (9)
> experience, reputation and ability of the attorneys, (10) the "undesirability" of the
> case, (11) nature and length of the professional relationship with the client, and (12)
> awards in similar cases.[80]

However, "rarely are all of the *Johnson* factors applicable . . . in a common fund situation."[81]

The Amended Settlement Agreement calculates the common fund at $550,000[82] and

proposes attorneys' fees in the amount of 33.33% (one-third) of the fund, or $183,315.[83]

Considering the proposed fee award in light of the relevant factors detailed below, the court

concludes that one-third of the Gross Settlement Amount, or $183,315, is reasonable.  The court

uses the following relevant factors in making this determination:

**Time and Labor Required.**  This action was filed nearly three years ago.[84]  After a year

of litigation and motions practice, the parties entered into extensive settlement negotiations with

---

[78] *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *see also Peterson v. Mortg. Sources, Corp.*, No. CIV.A. 08–2660–KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) ("This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions.").

[79] *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

[80] *See Gottlieb*, 43 F.3d at 483 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

[81] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

[82] Dkt. 83-1 (Amended Settlement Agreement) ¶ 4.

[83] *Id.*

[84] Dkt. 2 (Original Complaint).

TPUSA that resulted in a successful settlement.[85]  Class Counsel has now assisted in two joint motions to seek certification of the class and approval of the proposed settlement.  To date, Class Counsel has spent over 470 hours prosecuting this case and additional time will be required before it is fully resolved.[86]  Counsel's time and labor supports the proposed fee award.

**Preclusion of Other Employment Due to the Case.**  In light of the time and labor expended on this case, the court agrees that Class Counsel's ability to accept and work on other employment has been impeded.[87]

**Novelty and Difficulty of the Question Presented by the Case.**  Plaintiffs' collective action alleges that TPUSA required class members to arrive fifteen minutes early to an unspecified number of training meetings without compensating for that time.[88]  But two defenses seriously threatened the strength of that claim.[89]  First, that the alleged non-compensated time was insubstantial or insignificant, where "employees cannot recover for otherwise compensable time if it is *de minimis*."[90]  Second, if the Tenth Circuit applied the *Klinghoffer* rule,[91] Plaintiffs' claim could fail because the total pay received by TPUSA employees during the work week divided by the hours actually worked exceeded the minimum wage.

Considering the difficulty of the facts in light of the viable defenses, the court finds this factor supports the fee award.

---

[85] Dkt. 83 (Second Joint Motion) at 10.

[86] Dkt. 83-3 (Snow Decl.) ¶ 28.

[87] Dkt. 83 (Second Joint Motion) at 24.

[88] Dkt. 21 (Amended Complaint) ¶¶ 18–19; Dkt. 83-1 (Amended Settlement Agreement) ¶ 2.

[89] *See* Dkt. 78 (Prior Order) at 9–11; *see also* Dkt. 44 (First Joint Motion) at 13–14.

[90] *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (citation omitted).

[91] *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333–34 (10th Cir. 1998) (citations omitted).

16

**Skill Required to Perform the Legal Service Properly.**  In addition to the challenges just described, class actions tend to "involve a specialized area of the law which is often complex and difficult, and where some degree of extra skill is needed to litigate the cases properly."[92] Further, FLSA collective actions are "fundamentally different" from typical Rule 23 class actions, adding another level of complexity.[93]  Accordingly, the court finds this factor supports the proposed fee award.

**Experience, Reputation and Ability of the Attorneys.**  Mr. Snow, lead attorney for Plaintiffs, has over seventeen years of experience litigating on behalf of employees and employers.[94]  His practice has "almost entirely consisted of employment litigation and wage and hour claims," including "vast experience . . . in class and collective action litigation."[95]  Snow's relevant experience supports the proposed fee award.

**Customary Fee / Awards in Similar Cases.**  Class Counsel seeks a contingent fee of one-third of the settlement fund, or $183,315.[96]  This is customary and consistent with fee arrangements in similar cases.[97]

---

[92] *Farley v. Family Dollar Stores, Inc.*, No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).

[93] *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).

[94] Dkt. 83-3 (Snow Decl.) ¶ 2–3.

[95] *Id.*

[96] Class Counsel provides a helpful lodestar calculation of $140,104 to assist the court in cross checking the fee amount.  An award of $183,315 amounts to a 1.31 multiplier, which is comparatively modest.  *See In re Qwest Commc'ns Int'l, Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) ("[C]ounsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.").

[97] *See e.g.*, *Uselton*, 9 F.3d at 854 (approving fee award of 29% of the common fund); *Owner–Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02-CV-950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014) (approving a fee award that represented 33.3% of a settlement fund); *Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *5–6 (D. Colo. Dec. 22, 2010) ("The customary fee award to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101 (D.N.J. 2001) (collecting cases approving fee requests of between 27.5% and 33.8% of the common fund, and ranging from $1.46 to $37.1 million).

**Fixed or Contingent Fee / "Undesirability" of the Case.**  Given the contingent nature of the representation, Class Counsel risked receiving no compensation for over 470 hours of work in the event of a loss.[98]  Here, Plaintiffs also claim to have incurred $11, 573.34 in litigation expenses.[99]  These litigation costs similarly would have gone unreimbursed.[100]  Thus, the contingent nature of Class Counsel's representation supports the requested fee award.

Moreover, the significant time commitment and financial investment coupled with risk of no payment enhances the undesirability of this case.[101]

**Amount Involved and Results Obtained.**  Class Counsel obtained a settlement amount of $550,000, providing $4.60 for each opt-in plaintiff, in a case where the Defendant's liability could have been as high as $3,534,302.50.[102]  With an estimated 20% opt-in rate, each opt-in plaintiff will receive a payment of approximately $22.99 instead of the $72.50 they would receive if Plaintiffs were to succeed on their claims.[103]  However, as discussed previously, "the presence of [lawful defenses] to payment . . . warrant a reasonable compromise."[104]  Accordingly, this factor supports the fee award.

### iii.   Costs and Expenses

The FLSA provides for recovery of "a reasonable attorney's fee . . . and costs of the action."[105]  Class Counsel asks to be reimbursed from the Gross Settlement Amount for out-of-

---

[98] Dkt. 83 (Second Joint Motion) at 25.

[99] *Id.*

[100] *Id.*

[101] *See id.* at 26; *see also In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993).

[102] Dkt. 78 (Prior Order) at 17 n.94.

[103] Dkt. 83 (Second Joint Motion) at 13.

[104] *Moreno*, 729 F. Supp. at 1348.

[105] 29 U.S.C. § 216(b); s*ee Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("[A]n attorney who creates or preserves a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred." (internal quotation marks omitted)).

18

pocket litigation costs in the amount of $11,573.34.[106]  This reimbursement is agreed to in the Amended Settlement Agreement[107] and disclosed to putative class members in the notice.[108]  It represents just over 2% of the settlement fund.  For these reasons, the court finds this request reasonable.

### iv.   Administrator's Costs

The Amended Settlement Agreement proposes administrator's costs estimated at $103,500 to be paid from the Gross Settlement Amount.  This amounts to nearly 19% of the settlement fund.[109]  The administrator's cost covers the preparation of the opt-in website, the mailing of notice postcards and settlement checks, and the tax reporting of such payments for 48,749 potential settlement class members.[110]  The parties received multiple bids before selecting Simpluris, Inc. as the Class Administrator and worked with Simpluris to minimize costs.[111] Given the large size of the potential settlement class and the parties' efforts to minimize costs, the proposed Class Administrator's costs are reasonable.[112]

### D.  Fairness Hearing and Final Approval of the Settlement Agreement

Unlike Rule 23 class action settlements, fairness hearings are not required for approval of collective action settlements under the FLSA.[113]  However, many courts have determined that "fairness hearings should be held unless the parties notify the court that the opt-in plaintiffs had

---

[106] Dkt. 83-3 (Snow Decl.) ¶ 31; Dkt. 83 at 13.

[107] Dkt. 83-1 (Amended Settlement Agreement) ¶¶ 5, 15 (litigations costs capped at $12,000).

[108] Dkt. 83-1 (Amended Settlement Agreement) at 17.

[109] $103,500 divided by $550,000 equals 18.82%.

[110] Dkt. 83 (Second Joint Motion) at 31.

[111] *Id.*

[112] *See, e.g.*, *Campbell v. C.R. England, Inc.*, 2015 WL 5773709, at *8 (D. Utah Sept. 30, 2015) (approving administrator's costs of $60,000 for a class size of 10,000 individuals); *Whittington*, 2013 WL 6022972, at *6 (approving administrative fees of $85,000 for a class size of 475 individuals).

[113] *See* 29 U.S.C. § 216(b).

notice of the settlement and an opportunity to object."[114]  The court will reserve the question of whether a fairness hearing and/or formal motions practice is necessary to convert to final approval until submission of the class and any objections received.

## CONCLUSION

For the foregoing reasons, the court GRANTS the parties' Second Joint Motion[115] and hereby ORDERS that:

1. The instant FLSA collective action settlement is conditionally certified for purposes of settlement;

2. The Amended Settlement Agreement is given PRELIMINARY APPROVAL as fair and reasonable;

3. The parties are directed to implement the administration of the settlement as set forth in the Amended Settlement Agreement; and

4. Pursuant to the Amended Settlement Agreement, the names and written consents of individuals who opt-in to the action and all timely objections shall be electronically filed with the court no later than three (3) business days from the end of the objection period.[116]

IT IS FURTHER ORDERED that the parties amend the notice to include language "explaining that opt-in plaintiffs will not join the action unless their names are filed with the court and clarifying who is expected to fulfill this requirement (e.g., Plaintiffs' counsel or the

---

[114] *Stubrud v. Daland Corp.*, No. 14-2252-JWL, 2015 WL 5093250, at *1 (D. Kan. Aug. 28, 2015) (citations omitted).

[115] Dkt. 83 (Second Joint Motion).

[116] Dkt. 83-1 (Amended Settlement Agreement) ¶ 10.

opt-in plaintiff)."[117]  The parties must file this amended notice of settlement with the court no later than seven (7) days from this order.

       SO ORDERED this 29th day of April 2021.

                          BY THE COURT:

                          _____
                          ROBERT J. SHELBY
                          United States Chief District Judge

---

[117] Dkt. 78 (Prior Order) at 22.